# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| JENNIFER E. PRETTYMAN, | Civil No. 09-2794 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| STRYKER CORPORATION, and STRYKER SALES CORPORATION, | |
| Defendants. | |

Thomas B. Powers, **WILLIAMS LOVE O'LEARY & POWERS. P.C.**, 9755 S.W. Barnes Road, Suite 450, Portland, OR 97225-6681; and Caia V. Johnson, **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for plaintiff.

Timothy P. Griffin, **LEONARD, STREET AND DEINARD**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendants.

Plaintiff Jennifer E. Prettyman ("Prettyman") brings this action against defendants Stryker Corporation and Stryker Sales Corporation (collectively "Stryker") because she alleges that she developed an irreparable and lifelong shoulder condition after a surgeon inserted a pain pump into her shoulder. Prettyman claims that Stryker manufactured the pump that harmed her. Stryker moved for summary judgment because it claims that there is a lack of adequate information about the identity of the pump at issue; it also moves to exclude certain documents as hearsay. Because the Court finds that whether Stryker manufactured the pain pump used in Prettyman's shoulder remains a genuine issue of material fact, the Court denies Stryker's motion for summary judgment.

## BACKGROUND

### I.  SURGERY

On March 12, 2003, Prettyman underwent shoulder surgery at Legacy Good Samaritan Hospital ("Legacy") in Portland, Oregon.  Dr. Ronald Bowman from the Occupational Orthopedics clinic performed the surgery.  At the end of the surgery, Dr. Bowman inserted a pain pump in Prettyman's shoulder joint to continuously infuse an anesthetic mixture for post-operative pain relief.  (Decl. of Thomas B. Powers, Ex. 4, at 3-5, Mar. 20, 2012, Docket No. 105.)

### II.  POST-SURGERY NOTES

Sometime after inserting the pain pump into Prettyman, Dr. Bowman filled out a pre-printed Legacy pain pump order form.[1]  On the form, Dr. Bowman checked a box next to the name "Stryker," handwrote "3000" as the model name, and filled in "50" mL for the volume of the ordered pain pump.  Dr. Bowman also dictated an operative report approximately twenty minutes following the surgery.  The report listed Dr. Bowman as the surgeon and noted "Placement of Stryker 3000 pain pump" under the heading "Name of Operation."  (*Id.*, Ex. 1, Ex. 2, Ex. 4 at 13.)  Although Dr. Bowman identified the pump as a "Stryker 3000" with a "50" mL volume, Stryker never manufactured a pain pump model 3000 nor 50 mL pain pumps.  (Decl. of Randy Eggen ¶ 3, Feb. 22, 2012, Docket No. 96.)

_____

[1] Apparently, it was standard operating procedure at Legacy to fill out a pain pump order form after a surgery, presumably to restock the available pumps.

## III.    ALLEGED EFFECTS OF PAIN PUMP

The pain pump was designed for one-time use.  Accordingly, Prettyman discarded her pain pump after use.  (Pl.'s Resp. to Mot. for Summ. J. at 2, Mar. 20, 2011, Docket No. 104.)

Following the surgery, Prettyman allegedly developed a condition in her shoulder called chondrolysis.  Chondrolysis is a complete, or nearly complete, loss of cartilage in the shoulder joint.  (Am. Compl. ¶ 10, Oct. 22, 2009, Docket No. 5.)

## IV.    DR. BOWMAN'S RECOLLECTIONS OF THE SURGERY

Six years after the surgery, on June 15, 2009, Dr. Bowman signed an affidavit in which he stated that he "inserted a Stryker pain pump in [Prettyman]" and "exclusively used Stryker 3000 Pain Pumps during the time period [Prettyman] received her pain pump."   Dr. Bowman neither dictated nor drafted this affidavit; rather, one of Prettyman's attorneys provided it to him and he signed it.  (Powers Decl., Ex. 3; Decl. of Tim Griffin, Ex. 1 at 19-20, Feb. 27, 2012, Docket No. 95.)

During a February 9, 2012 deposition, Dr. Bowman stated it was "unlikely" he checked the wrong manufacturer on the pre-operative order form, although he admitted that he did not recall what pain pump he actually used in Prettyman's surgery.  (Griffin Decl., Ex 1 at 16.)

## V.    SOURCE OF THE PAIN PUMP

Dr. Bowman testified that, at the time of Prettyman's surgery, he exclusively used pain pumps provided by Pacific Medical, a distributor.  (Griffin Decl., Ex. 1 at 7.)  However, Stryker did not market, sell, or provide any pain pumps to Pacific Medical between 2002 and 2005, nor did Stryker directly provide pain pumps to Dr. Bowman. (Eggen Decl. ¶ 3.)

However, it appears that Stryker pain pumps were present at Legacy around the time of Prettyman's surgery.  (*See* Griffin Decl., Ex 2.)  Because Dr. Bowman was new to Legacy, he acknowledges that he may have been unaware of some arrangements at the hospital, such as whether the hospital provided pain pumps to surgeons.  (Powers Decl., Ex. 4 at 7.)  Therefore, although Dr. Bowman has no specific recollection of this fact, it is possible that Dr. Bowman received the pain pump used in Prettyman's surgery from Legacy.

## ANALYSIS

## I.    STANDARD OF REVIEW

Stryker moves for summary judgment.  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary

judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     GENUINE ISSUE OF MATERIAL FACT

In a products liability case, summary judgment is warranted when plaintiffs produce only speculative evidence that the named defendant manufactured the product at issue. *Mason v. Spiegel, Inc.*, 610 F. Supp. 401, 405 (D. Minn. 1985). In the absence of evidence giving rise to a reasonable inference that a defendant manufacturer made the allegedly defective product, a plaintiff is barred as a matter of law from holding the manufacturer liable. *Wetzel v. Eaton Corp.*, 62 F.R.D. 22, 28 (D. Minn. 1973).

Evidence is speculative when, in its entirety, the evidence includes a plaintiff's own statement unaccompanied and unsupported by other evidence. *See Habib v. NationsBank*, 279 F.3d 563, 566-67 (8th Cir. 2001). However, when a plaintiff produces evidence to support his or her claim, even "thin" evidence can sometimes create a reasonable inference from which a genuine issue of material fact can be drawn. *See Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 715-16 (8th Cir. 2003).[2]

---

[2] *See also Payne v. Pauley*, 337 F.3d 767, 770-71 (7th Cir. 2003) (showing that a plaintiff need not demonstrate that his or her evidence is more compelling than competing evidence); *Harrop v. Ingersoll-Rand Co.*, No. 92-C-2569, 1993 WL 14391, at *3 (N.D. Ill. Jan. 14, 1993) (noting that a plaintiff established a genuine issue of material fact even though he did not identify the specific model number of the product at issue).

Here, both Dr. Bowman's pre-printed order form and the operative report reasonably support an inference that Dr. Bowman used a Stryker pain pump in Prettyman's surgery. First, Dr. Bowman dictated the operative report within twenty minutes of the surgery identifying Stryker as the manufacturer of the pump. A jury might reasonably infer that this immediate notation was more accurate than Dr. Bowman's much-later, potentially hazy recollections. *See Greear v. Paust*, 256 N.W. 190, 192 (Minn. 1934).

Second, although Dr. Bowman identified a model number on the order form and operative report that does not correspond with a Stryker product, the jury may conclude that Dr. Bowman was more likely to remember the manufacturer of the pump than the model number. Indeed, Dr. Bowman's testimony supports this conclusion, as he indicated that it was unlikely he would check the wrong manufacturer but that he could have filled in the wrong model number. (Powers Decl., Ex. 4 at 8.)

Third, a jury might reasonably infer that Legacy provided Dr. Bowman with a Stryker pump to use in Prettyman's surgery. The pre-printed Legacy order form that Dr. Bowman filled out after the surgery listed Stryker pumps as available to order, indicating that Dr. Bowman may have had access to such pumps.

Finally, Dr. Bowman's admitted unfamiliarity with Legacy's operating procedures at the time of Prettyman's surgery further buttresses the above inferences. A jury could infer that Dr. Bowman could not remember, years after the surgery, who delivered Prettyman's pump to him and that his notations shortly after the surgery were more reliable than his later recollections.

- 6 -

The pre-printed order form and the operative report permit a reasonable inference that Dr. Bowman used a Stryker pain pump during Prettyman's surgery.   Therefore, if this evidence is admissible, the Court must deny Stryker's summary judgment motion. The Court will next consider whether the pre-printed order form and the dictated operative report are admissible under the Federal Rules of Evidence.

## III.   HEARSAY

Stryker moves to exclude as hearsay the pre-printed order form and the dictated operative report because, Stryker contends, they were not produced by someone with knowledge and are not trustworthy.[3]  The Court finds that, for purposes of this summary judgment motion, the pre-printed order form and the operative report are admissible business records.[4]  However, the Court reserves its final ruling on this issue for trial.

For a document to qualify for the business records exception, it must, among other qualifications, have been created by a person with knowledge and be trustworthy.  *See* Fed. R. Evid. 803(6)(A), (E).   An offering party has the burden of establishing that a business record was made at or near the time of the event by – or from information transmitted by – someone with knowledge.  *Shelton v. Consumer Products Safety Com'n*,

---

[3] Stryker also moves to exclude Dr. Bowman's 2009 lawyer-drafted affidavit.  However, the Court need not find whether Dr. Bowman's 2009 affidavit is admissible to resolve this summary judgment motion.  This affidavit is not a business record so its admissibility, if present, would need to be based on other rules of evidence that are not discussed by the parties.  The Court therefore reserves judgment on the admissibility of this affidavit for trial.

[4] The Court declines to consider any other grounds upon which it might admit the documents because the parties raise only the business records exception.

277 F.3d 998, 1009-10 (8th Cir. 2002).   Once the offering party has met this burden, the burden shifts to the party opposing admission to prove the document's inadmissibility by establishing a sufficient indicia of untrustworthiness.   *Id.*

At this stage, Prettyman has alleged sufficient facts to suggest that Dr. Bowman was a person with knowledge when he created the pre-printed order form and dictated the operative report.   As explained above, Dr. Bowman filled out the order form and dictated the report shortly after the surgery, suggesting that he had knowledge of the pump's manufacturer at that time.   The Court therefore finds that Dr. Bowman was likely a person with knowledge for the purposes of this summary judgment motion but reserves final judgment for trial.

Second, both the pre-printed order form and the operative report appear trustworthy.   Records made in course of regularly conducted business may be admissible unless "the source of information []or the method or circumstances of preparation indicate a lack of trustworthiness."   Fed. R. Evid. 803(6)(E).   Business records are assumed to be trustworthy unless shown to be otherwise.   *Shelton v. Consumer Products Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002).   "The trial court has broad discretion in determining whether documents, otherwise admissible as business records, are sufficiently trustworthy."   *See Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 626 (8th Cir. 1983).   Because Dr. Bowman filled out the order form and dictated the operative report on the day of Prettyman's surgery, and because there appears to be insufficient

evidence to rebut the presumption that these records are trustworthy,[5] the Court finds that the order form and the operative report were trustworthy for purposes of Stryker's summary judgment motion.  However, the Court reserves final judgment for trial.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Stryker Corporation and Stryker Sales Corporation's Motion for Summary Judgment [Docket No. 92] is **DENIED.**

DATED:  July 3, 2012
at Minneapolis, Minnesota.

s/ John M. Tunheim

JOHN R. TUNHEIM
United States District Judge

---

[5] Although Dr. Bowman appears to have made an error regarding at least the model number of the pump, "[p]roof of one error . . . does not render the record inadmissible."  *See Hardesty v. Corrova*, 501 N.E.2d 81, 85 (Ohio Ct. App. 1986).  "[O]ne cannot expect routine record-keeping to be completely error-free.  Where actual error is suspected the challenge should be to the accuracy of the business record, not to its admissibility" in cases such as these where there appears to be sufficient indicia of trustworthiness.  *See State v. Ben-Neth*, 663 P.2d 156, 159 n.2 (Wash. Ct. App. 1983).